**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| APRIL BROWN, | &#124; |
|     PLAINTIFF, | &#124; |
| | &#124; |
| v. | &#124; CASE NO.:  4:20-cv-1328 |
| | &#124; |
| DEBT MANAGEMENT PARTNERS, LLC, | &#124; |
| HARTFORD CASUALTY INSURANCE COMPANY, | &#124; |
| NATIONAL DEBT HOLDINGS LLC, | &#124; |
| JOHN DOE COMPANY ONE a/k/a "LSH HOLDINGS" | &#124; |
|     a/k/a "LS HOLDINGS" and | &#124; |
| JOHN DOE COMPANY TWO a/k/a "DP MORGAN", | &#124; |
|     DEFENDANTS. | &#124; |
| | &#124; |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Debt Management Partners, LLC (hereinafter referred to as "DMP"), National Debt Holdings LLC (hereinafter referred to as "NDH"), an unknown company using the name "LSH Holdings" and/or "LS Holdings" (hereinafter referred to as "LSH Holdings") and an unknown company using the name "DP Morgan" (hereinafter referred to as "DP Morgan").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

1

## PARTIES

6.  Plaintiff, April Brown ("Plaintiff"), is an adult individual residing in Arlington, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7.  DMP is a Delaware company.

8.  As will be described below, DMP purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of receiving from Plaintiff at least some of the balance due on that Account to make a profit.

9.  The principal purpose of DMP is the collection of debts by using the mails and telephone and other means.

10. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. NDH is a Florida LLC operating from Fort Lauderdale, Florida.

13. NDH is not registered to do business in Texas but can be served as allowed by Texas or Florida law.

14. NDH's website (https://nationaldebtholdings.com/company-information/) (last visited November 9, 2020) states:

> National Debt Holdings is a receivables management firm that assists creditors with improving cash flow performance from their accounts

2

receivables. Our team understands the precise balance needed to
successfully recover accounts receivable while protecting the brands and
reputations of our creditor partners.

15. As will be described below, NDH purchased, leased or otherwise received placement of an

Account allegedly owed by Plaintiff from DMP for the purpose of receiving at least some

payment from Plaintiff in the hopes of making a profit on its efforts on that Account.

16. The principal purpose of NDH is the collection of debts using the mails and telephone and

other means.

17. NDH regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another that arose out of transactions in which the money,

property, or services which are the subject of the transactions are primarily for personal,

family or household purposes.

18. NDH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is

defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is

defined by Tx. Fin. Code § 392.001(7).

19. The identity of LSH Holdings is currently unknown to Plaintiff, but is known by either

DMP and/or NDH.  Discovery will quickly identify the correct identity of this party.

20. LSH Holdings, at all times relevant hereto, used the unregistered fictitious business name

"LS Holdings" or "LSH Holdings" in its dealings with Plaintiff.

21. As will be described below, LSH Holdings communicated with Plaintiff via telephone in

order to collect a debt from Plaintiff that was previously owed to a third-party.

22. LSH Holdings was attempting to make a profit off of its communication with Plaintiff.

23. On information and belief, the principal purpose of LSH Holdings is the collection of debts

using the mails and telephone and other means.

24. On information and belief, LSH Holdings regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

25. On information and belief, LSH Holdings is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

26. The identity of DP Morgan is currently unknown to Plaintiff, but is known to either DMP and/or NDH.  Discovery will quickly identify the correct identity of this party.

27. DP Morgan, at all times relevant hereto, used the unregistered fictitious business name "DP Morgan" in its dealings with Plaintiff.

28. As will be described below, DP Morgan communicated with Plaintiff via telephone in order to collect a debt from Plaintiff that was previously owed to a third-party.

29. DP Morgan was attempting to make a profit off of its communication with Plaintiff.

30. On information and belief, the principal purpose of DP Morgan is the collection of debts using the mails and telephone and other means.

31. On information and belief, DP Morgan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

32. On information and belief, DP Morgan is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

33. Defendant Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, bond number 20BSBGV8871. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

34. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

35. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, plaintiff believes the Account was payday loan obtained from a payday lender to pay for various personal effects, but was not used for any business or commercial purposes.

36. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

37. The Account allegedly went into default with the original creditor, The Cash Store.

38. After the Account allegedly went into default, the Account was purchased by DMP for collection, directly or indirectly.

39. DMP placed the Account with, or otherwise transferred the Account to, NDH.

40. On information and belief, DMP maintained a financial interest in the Account at all times relevant hereto, such that DMP would make more money if CMH collected on the Account than it would make if CMH did not collect on the Account.

41. Plaintiff admits the existence of the Account, but disputes the amount all defendants attempted to collect from her.

42. Plaintiff requests that all defendants cease all further communications regarding the Account.

43. When DMP placed the Account with or otherwise transferred to, NDH, NDH did not (and as of the filing of this complaint still does not) have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

44. On information and belief, DMP knew that NDH did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

45. NDH certainly knew that it did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

46. Upon receipt of the Account from DMP, NDH transferred the Account to LSH Holdings for collection attempts to be directed at Plaintiff.

47. When NDH placed the Account with or otherwise transferred to, LSH Holdings, LSH Holdings did not (and as of the filing of this complaint still does not) have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

48. On information and belief, NDH knew that LSH Holdings did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

49. LSH Holdings certainly knew that it did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

50. On March 6, 2020, LSH Holdings left a message for Plaintiff, which stated:

> This message is intended for Ms. Brown. My name is Liza Johnson. I'm calling you today in reference to a request that I received under your name and address. You've been placed on my schedule to sign for certified documentation at your residence on Wednesday, March 11th. I'm calling

6

ahead to verify that you will be available between the hours of twelve and two and to make sure that you do have valid photo I.D. to sign. If you do have any questions or concerns pertaining to this matter, contact the number provided at 1 8 3 3 9 6 5 2 2 0 2. Along with providing your claim number when calling 1 7 2 2 7 7 4. Ms. Brown, if I do not receive a stop action, I will be making my attempt to the residence on Wednesday.

51. On March 9, 2020, LSH Holdings left a message for Plaintiff, which stated:

This message is intended for Miss Brown. This is Liza Johnson contacting you again in reference to the certified documentation that requires your signature. I have not received notification regarding the scheduled delivery for Wednesday. Unless I receive a stop action, make sure you are available at your residence between 12 and 2 with valid photo I.D. to sign. If you do have any questions or need to reschedule, contact the number provided at 1 8 3 3 9 6 5 2 2 0 2. Along with providing your claim number when calling 1 7 2 2 7 7 4.

52. On March 11, 2020, LSH Holdings left a message for Plaintiff, which stated:

Ms. Brown, this is Liza Johnson contacting you in reference to the certified documentation that requires your signature. I'll be making my attempt to your residence today between twelve and two. Be available with valid photo I.D. to sign. If you are unavailable, I have to send the paperwork back as a refusal to comply. So any questions or concerns you do have contact the number provided at 1 8 3 3 9 6 5 2 2 0 2, along with providing your claim number when calling 1 7 2 2 7 7 4. Ms. Brown, this is your final notice.

53. On March 20, 2020, LSH Holdings left a message for Plaintiff, which stated:

Hello, Ms. April Brown, my name is Christy Bradley, I got a message to return your call.  I'm just wondering what I can assist you with. If you could please call me back at your convenience at 866-352-9608.  Thank you.

54. On March 20, 2020, LSH Holdings returned Plaintiff's call and identified as calling from the company's "pre-legal department."

55. The statements made by LSH Holdings were false, misleading and deceptive. Specifically, but not limited to, the statements regarding Plaintiff having to be present to be served documents and needing identification available for signing for the documents.

7

Additionally, the description of LSH Holding's office as a "pre-legal department." These statements were made for the purpose of causing Plaintiff to fear that the collection efforts from LSH Holdings were more dire and serious than merely a call to collect a past due account balance, but rather a statement to make Plaintiff believe that she was imminently going to be sued despite the fact that LSH Holdings had no intent to sue Plaintiff at the time the statement was made.

56. The statements described above would cause the least sophisticated consumer to fear that the collection efforts from LSH Holdings were more dire and serious than merely a call to collect a past due account balance, but rather a statement to make Plaintiff believe that she was imminently going to be sued despite the fact that LSH Holdings had no intent to sue Plaintiff at the time the statement was made.

57. The communications from LSH Holdings failed to inform Plaintiff that LSH Holdings was a debt collector or that the communication was an attempt to collect a debt or that any information obtained by LSH Holdings would be used for the purpose of debt collection.

58. LSH Holdings never informed Plaintiff of her rights under 15 U.S.C. § 1692g.

59. On March 28, 2020, Plaintiff called DMP to determine the chain of ownership of the Account and Plaintiff was told by DMP that DMP no longer "owns" the Account but that it was sold to National Debt Holdings.

60. On information and belief (from Plaintiff's counsel's prior experience with DMP) DMP transferred the responsibility of collecting the Account to NDH in what DMP would describe as a "lease" of the Account but in which agreement DMP would still make more

money on the Account if the Account was collected after being transferred to NDH than it would make if the Account was not collected after being transferred to NDH.

61. In a call Placed by Plaintiff to NDH on March 28, 2020, NDH failed to inform Plaintiff that it was a debt collector or that the communication was an attempt to collect a debt or that any information obtained from Plaintiff would be used for the purpose of debt collection.

62. In a call Placed by Plaintiff to NDH on April 20, 2020, NDH failed to inform Plaintiff that it was a debt collector or that the communication was an attempt to collect a debt or that any information obtained from Plaintiff would be used for the purpose of debt collection.

63. In the call from Plaintiff to NDH on April 20, 2020, NDH informed Plaintiff that it had transferred the Account to DP Morgan for collection.

64. When NDH placed the Account with or otherwise transferred to, DP Morgan, DP Morgan did not (and as of the filing of this complaint still does not) have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

65. On information and belief, NDH knew that DP Morgan did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

66. DP Morgan certainly knew that it did not have a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code 392.101.

67. In the call from Plaintiff to NDH on April 20, 2020, NDH informed Plaintiff that it was legal for DP Morgan to collect from Plaintiff.

68. On April 20, 2020, Plaintiff called DP Morgan to discuss the Account. In this call, DP

Morgan informed Plaintiff that it was legal for DP Morgan to collect the Account from

Plaintiff.

69. On June 3, 2020, Plaintiff received a voicemail from DP Morgan which stated:

> You are being contacted by DP Morgan and Associates.  Our client is trying to
> determine [inaudible] options.  To avoid accelerated collection efforts and further
> damage to your credit, you must resolve this matter immediately.  Please call us back
> at 916-776-6696.  Thank you.

70. On June 4, 2020, Plaintiff received a voicemail from DP Morgan which stated:

> This call is for April Brown.  My name is Hank Schmidt with client services.  This is
> our final attempt to make contact with you regarding the settlement on your Cash
> store account.  They are offering fifty cents on the dollar to close out the account,
> zero it out and update it.  Give us a call at 916-776-6696.

71. The statement made by DP Morgan regarding impending "accelerate collection efforts"

was a false implied threat to sue Plaintiff despite having no intent to sue Plaintiff at the

time the statement was made.  Further, the statement that Plaintiff could avoid "further

damage to [Plaintiff's] credit" was false and misleading because DP Morgan did not

report information to any of the credit bureaus nor did it have any intent to sue Plaintiff.

Thus, there was no avenue to further damage Plaintiff's credit.

72. The statements described above would cause the least sophisticated consumer to believe

that she imminently would be sued or her credit damaged if she did not immediately

repay the Account.

73. The statement by DP Morgan that it was legal for DP Morgan to collect from Plaintiff

was false, deceptive and misleading as DP Morgan did not have the requisite bond on file

with the Texas Secretary of State as required by Texas law.

74. The statement by NDH that it was legal for DP Morgan to collect from Plaintiff was false, deceptive and misleading as DP Morgan did not have the requisite bond on file with the Texas Secretary of State as required by Texas law.

75. The statement by NDH that it was legal for LSH Holdings to collect from Plaintiff was false, deceptive and misleading as LSH Holdings did not have the requisite bond on file with the Texas Secretary of State as required by Texas law.

76. In every communication with Plaintiff, DP Morgan failed to inform Plaintiff that DP Morgan was a debt collector or that the communication was an attempt to collect a debt or that any information obtained by DP Morgan would be used for the purpose of debt collection.

77. DP Morgan never informed Plaintiff of her rights under 15 U.S.C. § 1692g.

78. As of the filing of the Complaint in this matter no lawsuit has been filed against Plaintiff on the Account.

79. LSH Holdings did not provide Plaintiff with meaningful disclosure of its identity when it placed telephone calls to Plaintiff.

80. DP Morgan did not provide Plaintiff with meaningful disclosure of its identity when it placed telephone calls to Plaintiff.

81. LSH Holding's collection practices caused Plaintiff to suffer fear, stress, mental anguish, depression and/or distraction from normal life.

82. DP Morgan's collection practices caused Plaintiff to suffer fear, stress, mental anguish, depression and/or distraction from normal life.

83. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

84. The only reason that DMP and/or NDH and/or LSH Holdings and/or DP Morgan and/or their respective representative(s), employee(s) and/or agent(s) made telephone call(s) to, or received telephone calls from, Plaintiff was to attempt to collect the Account.

85. The only reason that DMP and/or NDH and/or LSH Holdings and/or DP Morgan and/or their respective representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

86. All of the conduct by DMP and/or NDH and/or LSH Holdings and/or DP Morgan and/or their respective representative(s), employee(s) and/or agent(s) alleged in the preceding paragraphs was done knowingly and willfully.

87. As a consequence of defendants' collection activities and communication(s), Plaintiff seeks statutory and actual damages as well as an injunction and attorneys fees and costs.

<u>**RESPONDEAT SUPERIOR**</u>

88. The representative(s) and/or collector(s) at LSH Holdings were employee(s) and/or agents of LSH Holdings at all times mentioned herein.

89. The representative(s) and/or collector(s) at LSH Holdings were acting within the course of their employment at all times mentioned herein.

90. The representative(s) and/or collector(s) at LSH Holdings were under the direct supervision and control of LSH Holdings at all times mentioned herein.

91. The actions of the representative(s) and/or collector(s) at LSH Holdings are imputed to their employer, LSH Holdings.

92. The representative(s) and/or collector(s) at DP Morgan were employee(s) and/or agents of DP Morgan at all times mentioned herein.

93. The representative(s) and/or collector(s) at DP Morgan were acting within the course of their employment at all times mentioned herein.

94. The representative(s) and/or collector(s) at DP Morgan were under the direct supervision and control of DP Morgan at all times mentioned herein.

95. The actions of the representative(s) and/or collector(s) at DP Morgan are imputed to their employer, DP Morgan.

96. The representative(s) and/or collector(s) at NDH were employee(s) and/or agents of NDH at all times mentioned herein.

97. The representative(s) and/or collector(s) at NDH were acting within the course of their employment at all times mentioned herein.

98. The representative(s) and/or collector(s) at NDH were under the direct supervision and control of NDH at all times mentioned herein.

99. The actions of the representative(s) and/or collector(s) at NDH are imputed to their employer, NDH.

100. The representative(s) and/or collector(s) at DMP were employee(s) and/or agents of DMP at all times mentioned herein.

101. The representative(s) and/or collector(s) at DMP were acting within the course of their employment at all times mentioned herein.

102. The representative(s) and/or collector(s) at DMP were under the direct supervision and control of DMP at all times mentioned herein.

103. The actions of the representative(s) and/or collector(s) at DMP are imputed to their employer, DMP.

104. NDH was aware of and profited from the collection methods and practices used by the employees at LSH Holdings and DP Morgan.

105. The actions and inactions of the employee(s) and/or agents at LSH Holdings and DP Morgan are imputed to NDH.

106. DMP was aware of and profited from the collection methods and practices used by the employees at LSH Holdings and DP Morgan and NDH.

107. The actions and inactions of the employee(s) and/or agents at LSH Holdings and DP Morgan and NDH are imputed to DMP.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq.
## BY JOHN DOE COMPANY ONE A/K/A LSH HOLDINGS A/K/A LS HOLDINGS

108. The previous paragraphs are incorporated into this Count as if set forth in full.

109. The act(s) and omission(s) of LSH Holdings and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)& (10)&(11)&(13)&(14) and §1692g(a).

110. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from LSH Holdings.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY JOHN DOE COMPANY ONE A/K/A LSH HOLDINGS A/K/A LS HOLDINGS

111. The previous paragraphs are incorporated into this Count as if set forth in full.

112. The act(s) and omission(s) of LSH Holdings and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(5)&(8)&(14)&(17)&(19).

113. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against LSH Holdings enjoining it from future violations of the Texas Finance Code as described herein.

114. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from LSH Holdings.

115. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from LSH Holdings.

116. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY JOHN DOE COMPANY ONE A/K/A LSH HOLDINGS A/K/A LS HOLDINGS

117. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, LSH Holdings is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  LSH Holdings intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

118. Plaintiff suffered actual damages from LSH Holdings as a result of the intrusion on Plaintiff's privacy.

## COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY JOHN DOE COMPANY TWO A/K/A DP MORGAN

119. The previous paragraphs are incorporated into this Count as if set forth in full.

120. The act(s) and omission(s) of DP Morgan and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)& (10)&(11)&(13)&(14) and §1692g(a).

121. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DP Morgan.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY JOHN DOE COMPANY ONE A/K/A DP MORGAN

122. The previous paragraphs are incorporated into this Count as if set forth in full.

123. The act(s) and omission(s) of DP Morgan and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(5)&(8)&(14)&(17)&(19).

124. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DP Morgan enjoining it from future violations of the Texas Finance Code as described herein.

125. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DP Morgan.

126. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DP Morgan.

127. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY JOHN DOE COMPANY ONE A/K/A DP MORGAN

128. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, DP Morgan is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  DP Morgan intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

129. Plaintiff suffered actual damages from DP Morgan as a result of the intrusion on Plaintiff's privacy.

## COUNT VII:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY NATIONAL DEBT HOLDINGS LLC

130. The previous paragraphs are incorporated into this Count as if set forth in full.

131. The act(s) and omission(s) of NDH and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. §1692e(2)&(5)&(8)&(10)&(11) and §1692g(a).

132. By having a financial interest in LSH Holdings' and DP Morgan's conduct toward Plaintiff and/or by ratifying and/or approving the conduct of LSH Holdings and DP Morgan, NDH is liable for the act(s) and omission(s) of LSH Holdings' and DP Morgan's and their respective representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)&(10)&(11)&(13)&(14) and §1692g(a).

133. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from NDH.

## COUNT VIII:  VIOLATIONS OF THE TEXAS FINANCE CODE BY NATIONAL DEBT HOLDINGS LLC

134. The previous paragraphs are incorporated into this Count as if set forth in full.

135. The act(s) and omission(s) of NDH and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.304(a)(2)&(5)&(8)&(14)&(19) and §392.306.

136. By having a financial interest in LSH Holdings' and DP Morgan's conduct toward Plaintiff and/or by ratifying and/or approving the conduct of LSH Holdings and DP Morgan, NDH is liable for the act(s) and omission(s) of LSH Holdings' and DP Morgan's and their respective representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(5)&(8)&(14)&(17)&(19).

137. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against NDH enjoining it from future violations of the Texas Finance Code as described herein.

138. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from NDH.

139. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from NDH.

140. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT IX:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY NATIONAL DEBT HOLDINGS LLC

141. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, NDH is liable to Plaintiff for colluding with LSH Holdings and DP Morgan to invade Plaintiff's privacy (intrusion on seclusion).  NDH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

142. Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's privacy.

## COUNT X:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DEBT MANAGEMENT PARTNERS, LLC

143. The previous paragraphs are incorporated into this Count as if set forth in full.

144. By having a financial interest in the conduct of LSH Holdings and DP Morgan and NDH toward Plaintiff and/or by ratifying and/or approving the conduct of those companies, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)&(10)&(11)&(13)&(14) and §1692g(a).

145. DMP is liable for its conduct in violation of 15 U.S.C. §1692e(2)&(8)&(10) and §1692g(a).

146. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DMP.

## COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY DEBT MANAGEMENT PARTNERS, LLC

147. The previous paragraphs are incorporated into this Count as if set forth in full.

148. By having a financial interest in the conduct of LSH Holdings and DP Morgan and NDH toward Plaintiff and/or by ratifying and/or approving the conduct of those companies, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(5)&(8)& (14)&(17)&(19) and §392.306.

149. For its own conduct, DMP is additionally liable to Plaintiff under Tex. Fin. Code §392.304(a)(14)&(19) and §392.306.

150. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DMP enjoining it from future violations of the Texas Finance Code as described herein.

151. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DMP.

152. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DMP.

153. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
## BY DEBT MANAGEMENT PARTNERS, LLC

154. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of

action pled here, DMP is liable to Plaintiff for colluding with NDH and LSH Holdings

and DP Morgan to invade Plaintiff's privacy (intrusion on seclusion).  DMP

intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs,

and such intrusion would be highly offensive to a reasonable person.

155.  Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's

privacy.

**COUNT VII:  IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF DEBT MANAGEMENT PARTNERS, LLC**

156.  The previous paragraphs are incorporated into this Count as if set forth in full.

157.  The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s)

in violation of Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and

§392.304(a)(1)&(5)&(8)& (14)&(17)&(19) and §392.306 are imputed to Hartford

pursuant to Tex. Fin. Code § 392.102.

158.  Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees

and costs from Hartford.

**EXEMPLARY DAMAGES**

159. Exemplary damages should be awarded against LSH Holdings, DP Morgan, NDH and/or

DMP because the harm with respect to which Plaintiff seeks recovery of exemplary

damages resulted from malice (which means that there was a specific intent by LSH

Holdings, DP Morgan, NDH and/or DMP to cause substantial injury or harm to Plaintiff)

and/or gross negligence (which means that the actions and/or omissions of LSH

Holdings, DP Morgan, NDH and/or DMP (i) when viewed objectively from the

standpoint of LSH Holdings, DP Morgan, NDH and/or DMP at the time of the acts

and/or omissions involved an extreme degree of risk, considering the probability and

magnitude of potential harm to others and (ii) were such that LSH Holdings, DP Morgan,

NDH and/or DMP had an actual, subjective awareness of the risk involved but

nevertheless proceeded with conscious indifference to the rights, safety, or welfare of

others).

### JURY TRIAL DEMAND

160.   Plaintiff is entitled to and hereby demands a trial by jury.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

161.   Judgment in favor of Plaintiff and against John Doe Company One a/k/a LSH

Holdings a/k/a LS Holdings as follows:

a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C.

§1692k(a)(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e.   Statutory damages of not less than $100 for each violation of the chapter in which

Texas Fin. Code §392.403(e) is codified;

f.   An injunction permanently enjoining LSH Holdings following trial of this cause

from committing acts in violation of the Texas Finance Code as cited herein

pursuant to Tex. Fin. Code §392.403(a)(1);

g.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b);

h.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield*

*Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

     i.   Such other and further relief as the Court deems just and proper.

162. Judgment in favor of Plaintiff and against John Doe Company Two a/k/a DP Morgan as follows:

    a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e.   Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f.   An injunction permanently enjoining DP Morgan following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b);

    h.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i.   Such other and further relief as the Court deems just and proper.

163. Judgment in favor of Plaintiff and against National Debt Holdings LLC as follows:

    a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e.  Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

f.  An injunction permanently enjoining DMP following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

g.  Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b);

h.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

i.  Such other and further relief as the Court deems just and proper.

164.  Judgment in favor of Plaintiff and against Debt Management Partners, LLC as follows:

a.  Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.  Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e.  Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

f.  An injunction permanently enjoining DMP following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

g.  Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

      h.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

      i.  Such other and further relief as the Court deems just and proper.

165. Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

      a.  Statutory damages in the amount of not less than $100 for each violation of Tex. Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

      b.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

      c.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
209 Hubbard Drive
Heath, TX  75032
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff